## IN THE MATTER OF J. N. PAIKULI.

### CONTESTED ELECTION. BEFORE JUDD, C.J.

DECISION RENDERED APRIL 8, 1890. NOT HITHERTO REPORTED.

The legal requisite in a voter of the ability to "read" means the ability to read printed or written text with reasonable fluency and so as to comprehend the meaning; and the ability to "write" is the ability to express one's thoughts in writing legible to others.

Where the law provides that "if it appear that more than one ballot is enfolded," it shall be marked "rejected;" the mere fact that two are enfolded is conclusive ground for rejection, whether fraud be intended or not.

Where there might have been an equality of votes between two candidates, if certain votes improperly received had been rejected, the election is invalid.

A Justice of the Supreme Court has no jurisdiction, under the Statute of 1888, to try and determine, as grounds for vacating an election, the various offences denominated "illegal and corrupt practices."

### DECISION OF JUDD, C.J.

I find the following facts in this case.

A sworn petition signed by J. H. Barenaba, R. M. Makahalupa, William Henry, Kailiwai, J. N. Kaailua, David Watson, Kamalalo, Lono, D. Lena, Kia, A. Ku, D. Kama, and Keoho, residents of Koolaupoko, Oahu, persons who voted and were entitled to vote for representative to the Legislature from the Sixth Election District, in the Island of Oahu, to wit, the Koolau district, was filed in the office of the Clerk of the Supreme Court on the 4th day of March, 1890 within thirty days follow-

ing the general election of 1890. Sufficient costs were deposited
by the petitioners; the petition was addressed to me and set out
causes why the election of J. N. Paikuli, the representative who
received a certificate of election as representative for the said
District of Koolau from the Inspectors of Election of said dis-
trict, should be vacated and the seat of the said representative
declared vacant. I set and appointed Tuesday the 25th day of
March, 1890, at 10 A. M. at Chambers in the court room of the
Supreme Court in Honolulu, as the time and place for hearing
said petition, and caused notice of the same to be given to the
Inspectors of Election for the Koolau District, and to J. N. Pai-
kuli, the candidate who was returned as elected as representa-
tive for said district, by the marshal serving a copy of the peti-
tion upon M. Rose, Esq., chairman of the said inspectors, and
upon the said J. N. Paikuli, and a summons to appear at the
time and place aforesaid and show cause why the prayer of the
said petition should not be granted, and besides such notices I
also ordered the marshal to publish for three successive weeks in
the Kuokoa, a newspaper circulating in said district, a notice of
the hearing of the said petition, calling upon all persons whose
rights or interests might be affected to appear at the said hear-
ing and show cause why the said petition should not be granted;
which was done accordingly, as appears by the return and affi-
davit of the marshal now on file in this case. At the time and
place of the hearing, on the 25th March, M. Rose, James Olds
and Asa Kaulia, the Inspectors of Election for the Koolau dis-
trict, appeared but filed no answer ; also appeared J. N. Paikuli,
whose election as representative was contested by said petition,
and filed his answer, being represented by counsel, Hon. A·
Rosa and S. K. Kane, Esq. Copies of the said petition and an-
swer, marked respectively "A" and "B," are hereto annexed.
The petitioners were represented by counsel, W. R. and H. N.
Castle. Testimony was taken on behalf of the petitioners and
the respondent J. N. Paikuli, on the 25th and 26th, March
which evidence was fully reported by the stenographer of the
Supreme Court and reduced to writing, and is annexed hereto in
exhibit marked "C."

It was proved before me that 258 votes were cast at the said election in the Koolau district, of which 130 were for J. N. Paikuli, respondent, and 128 were for one J. L. Kaulukou, and the respondent then being elected by a majority of two votes, the Inspectors duly declared the said J. N. Paikuli elected representative for the Koolau district and caused the said result to be forwarded to the Minister of Interior and thereafter delivered a certificate of election to the said J. N. Paikuli and sent a copy thereof to the Minister of the Interior.

I find established as facts in this case that one Kauli, of Waimanalo, Oahu, a native born Hawaiian, born since the year 1840, being about 25 years old, voted at said election in the Koolau district for representative of said district; that the said Kauli had not voted at the first election held in 1887 under the present Constitution, and that he presented himself before the Inspectors of Election at their session to register voters, held on the 28th January, 1890, and desired to be registered as a voter for representative; that after some examination by the said Inspectors they considered him qualified and entered his name as a voter for representative of said district, he then and there taking the oath to support the Constitution; that the said Kauli was, at the several times when he qualified as a voter and cast his vote for representative, not able to read and write the Hawaiian, English, or some European language, although he was able, with difficulty, hesitation and often making mistakes, to spell out short words and pronounce them, and although he was able to write his own name and to write easy words from copy or dictation. The said Kauli was produced as a witness before me at the said hearing, and being sworn, said among other things that he could not read nor write except that he could write his own name; that he had never written a letter to any one nor read a newspaper. I find, as a matter of law, that the legal requisite in a voter of the ability to " read," means the ability to read printed or written text with reasonable fluency and so as to comprehend the meaning, and the ability to " write" is the ability to express one's thoughts in writing legible to others. The said Kauli was able to spell out with diffi-

culty and pronounce the candidates' names from the ballots, but I do not think the law intends that this rudimentary knowledge is sufficient. I therefore find that Kauli aforesaid was not entitled to vote, and that his vote was improperly received by the inspectors and should have been rejected.

I also find as facts in this case, that one Mahoe of Waikane, Koolau district aforesaid, a duly qualified voter, being an elderly Hawaiian, he stating his age to be 101 years, voted at the said election for Representative. He came to the polling place and presented to the chairman of the inspectors two ballots which appeared as one. They had been each folded separately twice, first across the middle, so as to form a rectangle, and again in the same manner and in the same direction; and when presented to the chairman, one ballot had been slipped inside of the other; they were not enfolded together for their entire length: nor were they entirely separate and merely held together by the voter's finger and thumb. They appeared, when held by the intending voter and taken by the chairman of the inspectors, as one ballot, and if the chairman had not examined the ends of the paper, the fact that there were two ballots presented might not have been discovered. The chairman announced that there two ballots, and proceeded to interrogate the voter Mahoe, and on the inspectors being satisfied that no fraud was intended by the voter, they gave him his ballots back and allowed him to retire and to come to the polls again and vote.

It is quite possible that the voter Mahoe did not intend to fraudulently deposit two ballots. He stated to the inspectors, on being asked, that the ballots had been given to him by one Kailaa, a runner or agent of the candidate J. N. Paikuli, and it may be that they were slipped in together when handed to him. He was not examined as a witness before me. The inspectors, as I have said, thought that the voter did not intend any fraud, and therefore did not fasten the ballots together and mark them " Double ballot rejected," with the name of the voter offering the same as required by the statute, but treated it as a mere mistake and allowed the voter to vote later.

I find as a matter of law that the vote of Mahoe should have

been rejected as a double vote. The law is explicit : that "if it appear that more than one ballot is enfolded" * * * "it shall be marked 'rejected.'" I think the inspectors are not authorized to examine the voter and satisfy themselves whether fraud is intended. The law allows but one vote to each voter for Representative, and the offering by a voter of what appears by an inspection of the ends of the paper to be more than one ballot, makes it imperative upon the chairman to announce the fact, and he must then proceed to open the folds sufficiently to settle the question beyond dispute. If two ballots are found enfolded, the voter is not allowed to select one of them and cast it, but the law prescribes that his vote shall be rejected. The voter loses his vote without reference to whether he intended fraud or not. If fraud was in fact intended by the presenting of two ballots, separately folded as required by the statute, and one then slipped into the last fold of the other, so as to appear as but one ballot, on the fact being discovered by the chairman of the inspectors, the voter would undoubtedly say that no fraud was intended. But if on a hasty or imperfect inspection of the ends of the ballot presented, the fact of two ballots being enfolded should escape the notice of the chairman and it be deposited in the box, the voter would then have cast one more vote than the law allows him to, and a fraud would be in fact perpetrated. It is to be noticed that the statute does not say that a vote is to be rejected when more than one ballot is enfolded in such a way as to indicate that they were fraudulently intended to be deposited as the one vote allowed by the law to one voter. The bare fact that two are enfolded authorizes the rejection. It is a conclusive ground for rejection. The law is otherwise as regards the counting of votes. Here "if two or more ballots are folded together in such manner as to indicate that they were deposited together and fraudulently," such ballot must be rejected. This more liberal provision is evidently in order that no ballot shall be rejected because it has become in some way slipped into another without any fraudulent intent on the voter's part, after it has been deposited in the box.

I know of no provision of the Statute by which, when a voter

has once presented his vote, he may be allowed to withdraw and come again to the polls and vote. The Statute says that "in all cases," whether rejected or not, the vote "must be returned to the chairman."

I find, therefore, that the vote of Mahoe was improperly received whereas it should have been rejected. If the above named Kauli and Mahoe, whose votes I have found should have been rejected, voted for Mr. Paikuli, there were counted for him two more votes than he was entitled to have. Deducting these two votes from the total of 130 that he received, it would make his votes 128, the same number cast for Mr. Kaulukou, i. e., a tie. If Kauli's and Mahoe's votes had been rejected by the inspectors there would have been an equality of votes between the two candidates, and in that case the Statute obliges the chairman to give a casting vote.

Therefore I find and adjudge that there were two votes cast at the election in question contrary to the provisions of law and that they affected the result, and consequently I adjudge the election aforesaid to be invalid and declare the seat of Mr. Paikuli as Representative for the District of Koolau to be vacant.

During the progress of this investigation my attention was called to a matter not alleged in the petition, to wit, that all of Mr. Paikuli's ballots were folded parallel with the lines of printed matter on them, and all of Mr. Kaulukou's were folded at right angles to the lines. A partial opening of one leaf of the folded ballot would identify it to any one who knew the method of folding. There is nothing in the Statute prescribing whether the ballot should be folded in one method or the other. But the Statute requires the rejection of all ballots "folded contrary to the directions of the Statute and if such folding be for the evident purpose of identification." I am of the opinion that the ballots of one opposing candidate were folded differently from the other for the purpose of identification, but I cannot say that either set of ballots should be rejected as not being in accordance with the Statute.

The third cause alleged in the petition, for vacating the election in question, is that said candidate Paikuli was guilty of

an "illegal practice" under an Act entitled an Act to amend and consolidate the election laws of the Kingdom, approved the 10th day of September, A. D. 1888, by engaging and hiring others as runners and canvassers to promote his election or by agreeing to pay others for such service.

The fourth cause alleged is that said candidate Paikuli was guilty of a corrupt practice and of bribing under the said Act by giving one F. R. Kahao, a duly qualified elector at said election for representative for said district, the sum of five dollars contrary to law in order to induce said elector to endeavor to pro cure the election of himself, the said Paikuli, and to procure the vote of said elector at said election.

The fifth cause alleged is that said J. N. Paikuli was guilty of a corrupt practice and of bribing by giving John Paoa, a duly qualified elector for representative from said district, the sum of four dollars contrary to law in order to induce the said Paoa to endeavor to procure the election of himself, the said Paikuli, to the Legislature.

The sixth ground alleged is that respondent failed to furnish a sworn statement of his expenses, etc. Section 75 of the Act gives in detail the circumstances under which the seat of an elective member shall become vacant : they are (1) death, (2) resignation, (3) conviction of offenses which render a person ineligible to election, (4) by his being convicted of a violation of any of the provisions of this Act, (5) by falling below any of the requirements necessary for an elective member of the Legislature, (6) by reason of any bribery, fraud, miscarriage or default of such member or his agent, whereby his election might be vitiated, (7) by reason of the election of another to his seat and (8) gross misconduct or neglect of business for which he was elected, unexcused absence from the daily meetings of the Legislature- —whereof the Legislature alone shall judge.

The next Section, 76, prescribes that the Legislature may take notice of any vacancy or alleged vacancy (meaning the vacancies caused by the circumstances mentioned in Section 75) and proceed accordingly with or without petition and may declare the seat vacant and order a new election.

Section 78 says that "in addition to the methods hereinbefore set forth for vacating any seat in the Legislature," a Justice of the Supreme Court with the right of appeal may entertain a petition to vacate an election or declare a seat vacant for any cause or causes ; and as Section 82 of the Act declares that the judgment of either the Legislature or Supreme Court if adverse to the "member" shall be final and binding upon all parties, but not so if the judgment be in favor of the member, I think it follows that both tribunals have concurrent jurisdiction except on the eighth ground which the Legislature alone has the jurisdiction of. Neither of these tribunals can try and sentence a member to fine and imprisonment for "illegal or corrupt practices." This can only be done by the Court before whom the criminal charge is made and by whom the conviction is had.

The "conviction" of a member already obtained in a competent Court is one of the grounds upon which either the Legislature or the Supreme Court may declare a seat vacant. The respondent, Paikuli, has been tried in the Police Court of Honolulu on charges of "illegal and corrupt practices," precisely similar to those alleged as causes 3, 4, 5 and 6 in the petition before me and these cases on appeal are now pending in the Supreme Court. If he is convicted certain penalties are visited upon him, and among them his seat is vacated and the Legislature may so declare it. If he shall be acquitted, how can I declare his seat vacant or vacate his election on these grounds ?

The Statute does not give concurrent jurisdiction to a Justice of the Supreme Court with the District or Police Court to try an elected member for "illegal or corrupt practices." I am thus led to the opinion that I have under this Statute no jurisdiction to try and determine, as grounds for vacating an election or vacating the seat of an elected member of the Legislature, the various offenses denominated "illegal and corrupt practices." A conviction thereof by a competent Court is a cause upon which I should be authorized to vacate an election. This conclusion will relieve the Justices of the Supreme Court, trying a contested election, from being placed in the antagonistic position to which

they might come, of finding the charges of "illegal or corrupt practices" proven against a member when, at the same time, upon the same evidence a Police or District Justice, or a jury, finds him not guilty. I doubt if the Legislature ever contemplated any such remarkable juxtaposition of events as a person acquitted of a criminal charge by a jury of the country, and at the same time the penalty of losing his seat in the Legislature visited upon him as being found guilty by the Court of the same criminal charge.

For these reasons I decline to entertain jurisdiction of charges 3, 4, 5 and 6, of the petition.

My judgment is, as above set forth, that upon the first and second causes, alleged in the petition, the election of the respondent, J. N. Paikuli, is invalid and his seat as a Representative for the District of Koolau is vacated.